UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAUN L. STEELE,<br>    Plaintiff,<br><br>V.<br><br>WENDY KNIGHT, individually and in her official capacity as superintendant of C.I.F.; DALE FLEMMING, individually and in his official capacity as program director of TC.; MATTHEW JOHNSON, individually and in his official capacity in internal affairs; SERGEANT PETERS, individually and in his official capacity as sergeant of D-dorm at CIF; CORRECTIONAL INDUSTRIAL FACILITY,<br>    Defendant(s). | )<br>)<br>)<br>)<br>)<br>) CAUSE NO.  1:13-cv-00982-JMS-DKL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

AMENDED CIVIL COMPLAINT
42 U.S.C. 1983

## Introduction

This is a Civil 42 U.S.C. 1983 Action filed by Shaun L. Steele, a state prisoner, for damages and injunctive relief, alleging Cruel and Unusual Punishment in violation of the Eighth Amendment to the United States Constitution, and Confinement in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution and also Discrimination as a "Class of One." The plaintiff also alleges the Tort of Negligence, Gross Negligence and Deliberate Indifference.

## JURISDICTION

1. The court has jurisdiction over the plaintiff's claims of violation of Federal Constitutional rights under 42 U.S.C. §§ 1331 (1) and 1343.

2. The court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

## GRIEVANCE PROCEDURE

3. On each and every issue in this complaint, the plaintiff did exhaust the entire grievance process required by law. The Informal, Formal and Grievance Appeals were all done.

4. The plaintiff has also exhausted the entire tort claim process as required by the Indiana Tort Claims Act for all issues mentioned in this complaint.

## PARTIES

5. The plaintiff Shaun L. Steele was at all times mentioned in this complaint, an inmate at the Correctional Industrial Facility ("CIF"), which is located in Madison County Indiana. He is now located in Miami Correctional Facility ("MCF") located at Bunker Hill.

6. Defendant Wendy Knight ("Knight"), upon information and belief, is a citizen and resident of Indiana. Knight is and was at all times relevant hereto, CIF's superintendant. The plaintiff sues Knight in her individual and official capacity. Her actions throughout this complaint were willful and wanton, done with malice, gross negligence and oppressiveness and she was clearly deliberately indifferent.

7. Defendant Dale Flemming ("Flemming"), upon information and belief, is a citizen and resident of Indiana. Flemming is and was at all times relevant hereto, the program director of the Therapeutic Community ("TC") at CIF. The plaintiff sues Flemming in his individual and official capacity. His actions throughout this complaint were willful and wanton, done with malice, gross negligence and oppressiveness and she was clearly deliberately indifferent.

8. Defendant Matthew Johnson ("Johnson"), upon information and belief, is a citizen and resident of Indiana. Johnson is and was at all times relevant hereto, Internal Affairs at CIF. The plaintiff sues Johnson in his individual and official capacity. His actions throughout this complaint were willful and wanton, done with malice, gross negligence and oppressiveness and she was clearly deliberately indifferent.

9. Defendant Sergeant Peters ("Peters"), upon information and belief, is a citizen and resident of Indiana. Peters is and was at all times relevant hereto, the sergeant on D-dorm at CIF. The plaintiff sues Peters in his individual and official capacity. His actions throughout this complaint were willful and wanton, done with malice, gross negligence and oppressiveness and she was clearly deliberately indifferent.

10. Defendant Correctional Industrial Facility ("CIF"), is the facility where all the incidents took place in this complaint.

## FACTS OF THE CASE

### PART A
### Background Information

11. The correctional industrial facility has five dorms for inmates that are two man cells and contain no working toilets or sinks inside of the cells. These are dorms B, C, D, E, and F.

12. Each dorm has two sides listed as the odd side and the even side.

13. There are approximately 124 inmates per side which makes approximately 1,240 inmates with no toilets or sinks in the cells.

14. The facility has one dorm that has sinks and toilets in the cells but this dorm is used for the honor dorm on one side and administrative segregation and disciplinary segregation on the other side. This is A-dorm.

15. On February 9th, 2012, Knight ordered that all trash cans be removed from cells so inmates no longer can use them for emergency excrement.

16. The cells have an intake vent that is approximately two inches by two inches, but no exhaust vents.

17. The facility was designed with a window in the cells for inmates to open in order to get fresh air and circulation. Wendy Knight ordered that all the windows have perforated steel cages be installed over them so that the inmates can no longer get air circulation.

### PART B
### No Toilets and Sinks

18. The plaintiff was brought to CIF on or about November 11th, 2010.

19. Since the plaintiff has been there, he has been subjected to being locked in cells with no toilets or sinks.

20. There is a button that the plaintiff has to push to alert the officers on duty in order to let them know that he has to use the restroom or get a drink of water.

21. Since being let out to use the restroom is left to the discretion of each individual officer, restroom breaks were unreliable and the plaintiff had to frequently deal with pain from holding his excrement or violate policy and use the restroom in a bottle or other container.

22. These unreliable restroom breaks are usually either due to inattention of the officers or out of sheer malice. It all depends on which officer is on duty and who he has a problem with that day.

23. But between November of 2010 and February of 2014, the plaintiff was forced on many occasions to have to urinate or defecate in bottles, bowls, and other containers.

24. The plaintiff has had to hold his urine and feces for so long before that it did cause pain and discomfort.

25. Because staff would write conduct reports for inmates urinating or defecating in cells, the plaintiff was forced to have to choose between pain or losing his earned credit time and staying in prison longer. This is extremely cruel and unusual.

26. The plaintiff has also had to be served meals in the cells during extended lockdowns while the smells of feces and/or urine were in the air. He also could not wash his hands before eating.

27. The plaintiff and multiple other inmates have written grievances over these issues and the plaintiff has even written to Wendy Knight personally in complaint. Neither Knight nor anyone else at CIF attempted to fix the problem.

28. The policy at CIF enforced the habit of cruel and unusual punishment by staff by instructing staff to not allow any inmates out of their cell to use the restroom until count was completely done. Count periods frequently ran late and would take more than an hour. Sometimes two and three hours.

## PART C
### January 27th, 2011

29. On January 20th, 2011, plaintiff and the rest of the facility was put on a lockdown over missing dental tools that had nothing to do with the plaintiff.

30. This lockdown lasted until about January 27th, 2011.

31. During that period of time, there were numerous incidents were the plaintiff was forced to defecate and urinate in bottles and bowls. Plaintiff was specifically told to do this by officers working in the building.

32. During this period of time, there was at least one period where plaintiff had to go more than nineteen (19) hours with no restroom break and no liquids.

## PART D
### December 16th, 2011

33. On or about December 16th, 2011, plaintiff had to defecate so bad that plaintiff was in extreme pain.

34. The facility had been on an extended lockdown for a count period. It had started at 10:00a.m. and did not end until 1:00p.m.

35. The plaintiff had pushed the call button in order to inform the officer that he had to use the restroom.

36. Sergeant Peters came to the cell door and told the plaintiff not to push the button again until the count light had gone off.

37. The plaintiff informed Sergeant Peters that he had to defecate and could not hold it. Peters informed the plaintiff that there was nothing that he could do and to just use a bottle or his trash can.

38. The plaintiff filed a grievance over this issue and was told by Mrs. Woods, who was the executive assistant, that this was a non-grievable issue.

39. There are multiple periods of lockdowns for count throughout each and every day and policy tells officers not to let anyone out during these count periods. The counts last anywhere from thirty (30) minutes too many hours.

## PART E
## July 5th, 2012

40. On July 5th, 2012, the plaintiff woke up at approximately 8:30am to go use the restroom. When he pushed the call button to get out, he found that the dorm was on lockdown.

41. That day and the days surrounding that day had been the hottest of the year with the heat index reaching 101° to 110° (Broadcast News Heat Index).

42. The inside of the cells where the plaintiff was housed reached at least 92°.

43. The plaintiff did not have a fan to cool off and did not have any liquids in his cell.

44. There are no air conditioners in the living areas for the inmates, only where officers are working, such as the cage area. Makes no sense, if it is hot enough for staff to require air conditioning, it is hot enough for inmates to have the same. Air conditioners are located in the counselors office, administration, control room, etc...

45. At around 11:00am, officers started letting inmates out to use the restroom and get drinks of water. Defendants' had started at cell 29 on 1 (down stairs) and worked their way to cell 1 on 1.

46. Then they went up stairs and started at room 1 on 3 (upstairs) letting inmates out to get water and use the restroom.

47. At around 1:30pm, officers quit going room to room and went on their lunch break never resuming their job of letting inmates out.

48. Defendants' had made it as far as 7 on 3 and never reached the plaintiffs cell which was 30 on 3.

49. At approximately 3:45, officers came in the plaintiff's side of the dorm and began searching cells.

50. When defendants' completed searching the plaintiff's cell at approximately 4:45pm, defendants' put the plaintiff and his cell mate back in the cell without letting them use the restroom or get water.

51. At approximately 5:00pm, an officer finally came to the plaintiff's cell and let him and his cell mate out to use the restroom, get water and empty bottles.

52. So the plaintiff and his cell mate was forced to set in a cell that was approximately 92°, with no fluids, no fan, and no restroom at all for the entire day.

53. He was forced to urinate and defecate in empty containers and set them in the corner of the room for the entire day.

54. The plaintiff was also forced to eat lunch in the cell with the smell of excrement in the air and he could not wash his hands before eating.

55. This same dorm that the plaintiff was being housed in also has a program where some inmates are allowed to have dogs to train in their cells.

56. During the lockdown period, officers came around and took the dogs outside to use the restroom and brought them water to drink. So the defendant's treated the dogs more humanely than defendants' did the plaintiff.

57. The defendants also do not provide fans for the inmates unless the inmates purchase it from commissary; but defendants' do provide fans for the cells that have dogs in them, free of charge.

## PART F
## November 22nd, 2013

58. On November 22nd, 2013, the plaintiff was awakened by staff at approximately 7:00am, after being locked in his cell for the entire night.

59. He had been locked in the cell all night long with no toilet or sink in the cell.

60. The staff who awakened him and the rest of the dorm was Matthew Johnson, Captain Fox, Dale Flemming and other staff.

61. Johnson instructed the entire dorm to line up at the door and to not use the restroom. That was an order for all (236+/-) inmates.

62. All of the inmates were escorted to the gym where defendants' were instructed to line up and prepare for urine tests.

63. Dale Flemming had decided to drug screen the entire dorm as part of the Therapeutic Community ("TC") program in which they were in.

64. The plaintiff's location in the line was near the back of the line.

65. The defendant's started drug screening two inmates at a time which took approximately 5 to 10 minutes each. At this rate, it would have taken approximately 13 hours to complete.

66. When the plaintiff got to the gym he had already had to urinate really bad after holding it all night.

67. Knowing that at the rate the tests were going, it was going to be hours before defendants' got to the plaintiff; the plaintiff went and asked if he could use the restroom. The defendants told him that if he urinated before he was tested it would be an admission of guilt.

68. So the plaintiff asked if he could go ahead and take his test and was told "no he could not cut in line."

69. There is a count time that takes place at 10:00am.

70. At about 9:45am, Flemming announced that if anyone wanted to go back to the dorm they could and that they would be given amnesty.

71. The plaintiff and multiple other inmates who could no longer hold their urine went to Flemming so they could go back to the dorm.

72. The plaintiff and other inmates asked if they were going to receive a conduct report for a failed drug screen and was told no by Flemming. They would be given amnesty, but would be working a lot harder on recovery.

73. At approximately 1:00pm, a Sergeant came to the dorm and called each inmate out, that went back early, in order to sign a piece of paper.

74. The paper was a waiver for the drug screen concerning their refusal to submit to the test. We were all told that if we did not sign it that we would be kicked out of the program that day.

75. Approximately a week later, we were all called up to the disciplinary hearing office in order to receive a conduct report for not taking the drug test.

76. So in essence, the plaintiff and others were tortured and tricked into signing an admission of guilt to a drug test in order to be let go back to the dorm to use the restroom.

77. The plaintiff was not dirty and had been clean for over two years, and had never failed a drug screen in his over 20 years in the Department of Correction.

78. This false dirty drug screen on the plaintiff's file severely effects his prison time and will keep him from being released on the modification that the trial judge stated that he would give to Steele.

## CAUSE OF ACTION

79. Defendants are all public officials acting under the color of state law.

80. Defendant Wendy Knight is a public official with supervisory responsibility over the Correctional Industrial Facility and also was directly involved with the damages against the plaintiff with her deliberate indifference and her discrimination as a class of one.

81. The plaintiff contends that the defendants knowingly and intentionally locked the plaintiff and other inmates in their cell, on numerous occasions over a thirty nine month period, with no working toilet and no working sink. The plaintiff was forced to go through extreme pain while holding his urine and feces for long periods of time to the point where he would eventually have to urinate and/or defecate in bottles, bowls and other containers. This is a direct violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

82. Defendant's also forced the plaintiff to have to eat meals in a cell with close confines to containers of feces and urine during the extended lockdown periods. So the plaintiff would have to eat his food while smelling not only his own excrement, but also that of the cell mate that he had at the time. He also had to eat this food without washing his hands after having to hold the urine bottles in his hand while urinating. This is a direct violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

83. The defendants would force the plaintiff to have to make a choice between 1) going through serious pain while holding his urine or feces and possibly using the restroom on himself or 2) violating the rules of the facility by urinating or defecating in the cell; which would get the plaintiff a conduct report if caught and forcing the plaintiff to lose earned credit time and stay in prison longer. This is a direct violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

84. The defendant's would put honor dorm inmates in cells that had both toilets and sinks in the cell and also allow them to open their cell windows when they wanted to for fresh air. This different treatment of the plaintiff from the honor dorm inmates is a blatant case of discrimination as a class of one.

85. The defendant's were very well aware that the plaintiff already was chronic care due to problems with his liver. So the defendant's had severely jeopardized the plaintiff's medical welfare in forcing him to hold his excrement beyond the point of pain; which is a violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment.

86. Defendant's were deliberately cruel and unusual in violation of the Eighth Amendment by keeping the plaintiff in an excessively hot cell in July of 2012, with no fluids to drink, no fan

to cool off and no air circulation. For the defendant's to go to each cell with a dog in it and take the dogs outside to use the restroom and give them water is also cruel and unusual and discrimination as a class of one.

87. As of the multiple issues of having to urinate and defecate in containers in the cells because of the no toilets and sinks, the no ventilation system, no trash cans and there being less than thirty (30) square feet of living space for both inmates in the cell; it is considered overcrowded in violation of the Eighth Amendment.

88. When the defendant's label those inmates with no conduct reports for over two and a half years as honor dorm inmates and put those inmates in cells with toilets and sinks in them, allowing them to use the restroom without awaiting permission from staff and allow those inmates to open their windows for proper circulation at will; it is a clear discrimination as a class of one. For proper air circulation, freedom to defecate and urinate at will, and freedom to get water to drink is not a privilege for only honor dorm inmates but a constitutional right for all.

89. When the defendant's Flemming and Johnson forced the plaintiff and others into lines in the gym at 7:00am and forced them to hold their urine past the point of pain or receive conduct reports; they not only violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, but they also violated his Fourteenth Amendment right to due process of law.

90. Defendant's have been informed on numerous occasions through the grievance system, personal letters and other complaints in concern of the problems with staff not allowing the plaintiff and many others out to use the restroom, get water to drink, problems with floor spacing, and poor ventilation; but defendants fail to take any meaningful action to correct the problems complained of and are therefore deliberately indifferent.

### REQUEST FOR RELIEF

**Injunctive Relief**

91. Plaintiff requests that a program be installed in the computers so that when an inmate pushes the button to use the restroom, it automatically lets them out to use the restroom; unless there are already more than five (5) inmates out. If there is already five (5) inmates out, it will put the sixth person on hold until one of the five lock down. Once one of the five lock down, it

automatically lets the next in line out. (This is similar to program implemented in Tyler v. Suffolk County).

92.     Plaintiff requests that Correctional Industrial Facility policy is changed so that inmates may come out to use the restroom during count time lockdowns when the count time goes on for more than fifteen (15) minutes.

93.     Plaintiff requests that Correctional Industrial Facility policy is changed so that it instructs officers to not make an inmate go more than fifteen (15) minutes beyond the time that they have requested to be let out to use the restroom or get a drink of water.

94.     Plaintiff requests that Correctional Industrial Facility policy is changed so that on days where the heat index is above 90°, officers allow inmates out to get a drink of water or ice once every hour.

95.     Plaintiff requests that all the cages put over the windows making it so that inmates can no longer open their windows be removed and bolted on the outside so that the purpose of security is still met but inmates can still open the windows for proper circulation.

**Compensatory Damages**

96.     $273,750 (reflecting $250 a day for each and every day plaintiff was locked in a cell with no toilets or sinks in the cell) jointly and severally against Knight and the Correctional Industrial Facility for physical pain and suffering, embarrassment, emotional injuries relating to the cruel and unusual punishment knowingly and intentionally inflicted on the plaintiff while being locked in a cell with no toilets or sinks in those cells. This would include Knights deliberate indifference in refusing to take any meaningful actions to correct the problems of officers refusing to let plaintiff and others out when she was made aware of the problems through grievances and other complaints and letters.

97.     $50,000 jointly and severally against Knight and the Correctional Industrial Facility for the cruel and unusual punishment inflicted on the plaintiff on July 5th, 2012, when he was forced to be locked in a cell the entire day in the excessive heat with no fluids, no air circulation, and no toilets or sinks; forcing plaintiff and his cell mate to urinate and defecate in bottles and bowls and leave them setting in the corner of the cell. Then having to eat lunch and dinner in the cell with the smell of excrement in the air and not be able to wash their hands before eating. Along

with another $10,000 for defendants' letting the dogs out to use the restroom and giving them water; treating them more humanely than the plaintiff.

98. $50,000 jointly and severally against Knight and the Correctional Industrial Facility for creating and enforcing a policy statement that instructs staff members at the Correctional Industrial Facility to violate the constitutional rights of the plaintiff and others in their care. This is the policy instructing the staff to not allow any inmates out of their cell at any time until an official clear count has been announced.

99. $50,000 jointly and severally against Knight and the Correctional Industrial Facility for cruel and unusual punishment inflicted on the plaintiff during the January 27th, 2011 lockdown when he was forced to be locked in a cell the entire day, for multiple days in a row, in the excessive heat with no fluids and no toilets or sinks; forcing plaintiff and his cell mate to urinate and defecate in bottles and bowls and leave them setting in the corner of the cell. Then having to eat lunch and dinner in the cell with the smell of excrement in the air and not be able to wash their hands before eating.

100. $50,000 jointly and severally against Knight, the Correctional Industrial Facility, and Peters for cruel and unusual punishment inflicted on the plaintiff during the December 16th, 2011 extended count period where Peters knowingly refused to allow the plaintiff to use the restroom and even instructing him to use the restroom in a bottle, which risked the plaintiffs release date.

101. $10,000 jointly and severally against defendants Knight, Correctional Industrial Facility, Flemming and Johnson for the punishment, including deprivation of liberty and amenity, and emotional injury resulting from their denial of due process in connection with the plaintiffs' disciplinary report resulting from the November 22nd, 2013 incident. Also the discrimination as a class of one committed by the defendants.

102. Grant such other relief as it may appear that plaintiff is entitled to.

**Punitive Damages**

103. $100,000 each against defendant's Knight and Correctional Industrial Facility.
104. $10,000 against defendant Peters
105. $50,000 each against defendant's Flemming and Johnson.

Shaun L. Steele
DOC #994225
Miami Correctional Facility
3038 W. 850 South
Bunker Hill, IN 46914


**DECLARATION UNDER PENALTY OF PERJURY**

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and accurate.

Executed at the Miami Correctional Facility on the 30th day of December, 2014.

Shaun L. Steele
DOC #994225
Miami Correctional Facility
3038 W. 850 South
Bunker Hill, IN 46914

**Plaintiff demands a trial by jury. [X] yes [ ] no**