UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAUN L. STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-00982-JMS-DKL |
| | ) | |
| WENDY  KNIGHT, *in her individual and* | ) | |
| *official capacity*, and DONNA CARNEYGEE, | ) | |
| *in her official capacity*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Shaun L. Steele asserts claims against the Defendants pursuant to 42 U.S.C. § 1983, alleging that he was subjected to unconstitutional conditions of confinement during his incarceration at the state correctional facility in Pendleton.  [Filing No. 149.]  Specifically, Mr. Steele alleges that conditions of his confinement related to his denial of access to a toilet, sink, sanitation, and drinking water, and his exposure to extreme temperatures violated his Eighth Amendment right to be free from cruel and unusual punishment.  [Filing No. 149; Filing No. 171 at 4.]  Defendants have moved for summary judgment, [Filing No. 162], and Mr. Steele opposes that motion, [Filing No. 171].  For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## I.
### APPLICABLE STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  Hampton v. Ford Motor Co., 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  Harper v. Vigilant Ins. Co., 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  Johnson v. Cambridge Indus., 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  Nelson v. Miller, 570 F.3d 868, 875 (7th Cir. 2009).

## II.
### RELEVANT BACKGROUND

The following statement of facts is set forth pursuant to the standards cited above.  That is, the facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Steele as the non-moving party, drawing all reasonable inferences in his favor.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. Steele is an inmate incarcerated with the Indiana Department of Correction ("IDOC"). [Filing No. 163-1 at 1.]  From November 10, 2010 until February 14, 2014, Mr. Steele was housed at the Correctional Industrial Facility ("CIF") in Pendleton.  [Filing No. 163-2 at 5-6.]  Defendant Donna Carneygee was the Superintendent at CIF from July 4, 2010 until November 25, 2011. [Filing No. 163-4 at 1.]  Superintendent Carneygee's duties included overseeing all operations of the facility, reviewing IDOC policy, approving facility procedures for compliance with policy, and approving all final offender discipline, staff hiring, and termination decisions.  [Filing No. 163-4 at 1.]  Defendant Wendy Knight succeeded Superintendent Carneygee, had the same duties, and remained in that position through the remainder of Mr. Steele's time at CIF.  [Filing No. 163-3 at 1.]  Mr. Steele was ultimately transferred from CIF to another facility.[1]  [Filing No. 163-2 at 10.]

Mr. Steele's prison conditions claim focuses on his time in the general population housing unit at CIF.[2]  [Filing No. 163-2 at 12-13.]  None of the cells in that unit were equipped with sinks or toilets.  [Filing No. 171-1 at 2; Filing No. 163-4 at 3.]  Each cell contains 78.2 square feet of

---

[1] Mr. Steele is currently assigned to work release at the Elkhart County Community Corrections Center, but the subject of his action stems solely from his incarceration at CIF.  [Filing No. 171-1 at 1.]

[2] All descriptions of cells relate solely to the general population cells at CIF.

3

space, which was reduced to 51.88 square feet of unencumbered space after subtracting the space occupied by a bunkbed, desk, and chair.  [Filing No. 163-5.]  Two inmates are housed in each cell. [Filing No. 163-2 at 7.]  The windows on the cells are secured and cannot be opened by the inmates. [Filing No. 163-3 at 4.]  Inmates may purchase personal fans to help cool their cells.  [Filing No. 163-3 at 4.]

The cell doors are typically locked from 11:00 p.m. until morning.[3]  [Filing No. 163-3 at 2; Filing No. 163-2 at 15.]  If an inmate needed to use the bathroom during that time, he could press a button in the cell to signal the request to the control officer stationed in the dorm area. [Filing No. 163-3 at 2.]  The control officer could use the same electronic system to allow the inmate's cell door to unlock, and the inmate could then leave the cell and use the restroom.  [Filing No. 163-3 at 2-3.]  In Mr. Steele's experience, his requests to use the restroom "were frequently ignored or completely discarded."  [Filing No. 171-1 at 2; Filing No. 163-2 at 15.]

Staff conducted a count of the inmates six times per day, in addition to any emergency counts conducted if staff believed an offender to be missing.  [Filing No. 163-3 at 3; Filing No. 163-2 at 13-15.]  Conducting a count could last anywhere from 30 minutes to multiple hours, depending on whether all inmates could be located.  [Filing No. 163-3 at 4; Filing No. 163-2 at 14-15.]  Based on Mr. Steele's experience, a count typically lasted less than one hour.  [Filing No. 163-2 at 15.]  Inmates could not use the bathroom during counts.  [Filing No. 163-2 at 16; Filing No. 171-4 at 6.]

---

[3] Superintendent Knight attests that the cells were locked until 4:00 a.m., [Filing No. 163-3 at 2], but Mr. Steele attests that the cells were locked "until 7:00 a.m. except for when you went to breakfast, whatever time that would be.  Then you would eat breakfast, come back, lock back down."  [Filing No. 163-2 at 15.]

During facility lockdowns, inmates were not permitted to leave their cells unless escorted by a member of the correctional staff. [Filing No. 163-3 at 2.] Extended lockdowns occasionally occurred during Mr. Steele's incarceration at CIF, such as from January 20-27, 2011, and for thirteen hours on November 22, 2013. [Filing No. 171-1 at 2.] During lockdown, prison staff took two inmates at a time to the bathroom, continuously rotating until all inmates had used the bathroom and then the staff would start over and take them for ice and water. [Filing No. 163-3 at 2.] The staff would then pass out meals and begin the restroom break rotation again. [Filing No. 163-3 at 2.] During lockdown, inmates were permitted to fill pitchers of water and have coolers in their cells. [Filing No. 163-3 at 2.]

Inmates occasionally urinated or defecated into empty containers when they were locked in their cells. [Filing No. 163-3 at 3.] Mr. Steele urinated in bottles once or twice per week while he was locked in his cell because he could no longer bear the physical pain of waiting to use the bathroom. [Filing No. 163-2 at 25; Filing No. 171-1 at 2.] He occasionally defecated in a container during lockdown. [Filing No. 163-2 at 25; Filing No. 171-1 at 2.] On December 16, 2011, prison staff told Mr. Steele to use a container to go to the bathroom. [Filing No. 171-1 at 2.] On November 22, 2013, Mr. Steele had to wait thirteen hours to use the restroom. [Filing No. 171-1 at 2.] Mr. Steele was not able to wash his hands or eliminate the foul odor from his cell after urinating or defecating in his cell without a toilet. [Filing No. 171-1 at 3.] His cellmate also regularly urinated or defecated in their cell. [Filing No. 171-1 at 3.]

During the summer months when Mr. Steele was incarcerated at CIF, he was occasionally locked in his cell for several hours or more without access to a fan, air conditioner, or drinking water, while temperatures exceeded 90 degrees. [Filing No. 171-1 at 3.] This included on July 5, 2012, when Mr. Steele was not allowed access to a fan or drinking water from 8:30 a.m. until 5:00

5

p.m.  [Filing No. 171-1 at 3.]  There was almost no ventilation in his cell because the prison windows were barred shut and there was little air flow from the small crack under the cell door. [Filing No. 171-1 at 3.]

The combination of conditions of his confinement at CIF caused Mr. Steele physical pain, jeopardized his health and safety, and caused him mental and emotional anguish.  [Filing No. 171-1.]  He still experiences "difficulties using the restroom including incontinence because of the many times [he] was in physical pain waiting to use the restroom."  [Filing No. 171-1 at 3; Filing No. 163-6 at 2.]  No doctor has treated Mr. Steele for the symptoms of which he complains.  [Filing No. 163-2 at 23.]

In April 2013, Mr. Steele filed a Complaint in state court against various Defendants, alleging various claims pursuant to 42 U.S.C. § 1983.  [Filing No. 1-1 at 21-29.]  Defendants removed the case to federal court, [Filing No. 1], and Mr. Steele's Third Amended Complaint asserts Eighth Amendment claims pursuant to 42 U.S.C. § 1983 and state law negligence and gross negligence claims against Defendants.  [Filing No. 149.]  Defendants have moved for summary judgment on all of Mr. Steele's claims, [Filing No. 162], and Mr. Steele opposes that motion, [Filing No. 171].

### III.
### DISCUSSION

Mr. Steele challenges the combined conditions of his confinement at CIF, which he alleges violate the constitutional prohibition against cruel and unusual punishment.  Specifically, Mr. Steele challenges the combined effect of his regular denial of access to a toilet, sanitation, and drinking water; his repeated denial of access to respite from extreme temperatures; and the small cell he was required to share with another inmate, which he contends made the unsanitary conditions even more unbearable.  [Filing No. 171 at 4-5.]  The parties dispute whether summary

6

judgment is appropriate on Mr. Steele's claims.  [Filing No. 163; Filing No. 164; Filing No. 171.] The Court will separately address the parties' arguments regarding the state and federal claims Mr. Steele pursues.

### A.  Eighth Amendment Claims

#### 1)  Generally Applicable Law

Mr. Steele pursues his federal claim pursuant to 42 U.S.C. § 1983.  [Filing No. 149.]  42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  The statute is not an independent source of liability but, instead, is "a means of vindicating rights secured elsewhere." *Narducci v. Moore*, 572 F.3d 313, 319 (7th Cir. 2009).  To state a § 1983 claim, a plaintiff must allege that he was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law.  *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005).

The Eighth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause "the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  This includes hazardous prison conditions. *Pyles*, 771 F.3d at 408 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  To that end, "[i]ncarcerated persons are entitled to confinement under humane conditions that provide for their 'basic human needs.'" *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes*, 452 U.S. at 337).  "[L]ife's necessities include shelter and heat," and a "lack of heat, clothing, or sanitation can violate the Eighth Amendment." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir.

7

2006) (citing *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing).")).   "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so.  This is true when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth, for example a low cell temperature at night combined with a failure to issue blankets."  *Gillis*, 468 F.3d at 493.   But "prison conditions may be uncomfortable, even harsh, without being inhumane."  *Rice*, 675 F.3d at 666.

An inmate's constitutional challenge to prison conditions requires a two-part examination where the alleged deprivation is examined both objectively and subjectively.   *Haywood v. Hathaway*, --- F.3d ---, 2016 WL 6988750, at *3 (7th Cir. 2016); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).  First, the Court "must determine whether the conditions at issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'"  *Townsend*, 522 F.3d at 773 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).   If the inmate successfully establishes that the conditions were sufficiently serious, the Court then examines whether prison officials acted with "deliberate indifference" to the conditions in question.   *Townsend*, 522 F.3d at 773.   Deliberate indifference is analyzed subjectively to determine whether the official knew that the inmate faced a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable measures to address it.   *Id.* (citations omitted).   "[I]t is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk.  Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference."  *Id.*

8

"The burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Pyles*, 771 F.3d at 408-09.  That said, "[t]he party opposing summary judgment receives the benefit of reasonable inferences." *Townsend*, 522 F.3d at 773.

### 2) Individual Capacity Claim Against Superintendent Knight

Mr. Steele brings an individual capacity claim only against Superintendent Knight.  [Filing No. 171 at 15 ("Individual capacity claims in this action only apply to Defendant Knight.").]  The Court will separately address the parties' arguments regarding each of the two elements of Mr. Steele's § 1983 claim against Superintendent Knight in her individual capacity.

### a) Whether Conditions Were Sufficiently Serious

First, the Court "must determine whether the conditions at issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Townsend*, 522 F.3d at 773.

Superintendent Knight argues that there is insufficient evidence for a jury to find that Mr. Steele was subjected to sufficiently serious conditions in violation of his Eighth Amendment rights.  [Filing No. 164 at 10-16.]  While Superintendent Knight concedes that Mr. Steele's conditions were "likely inconvenient and unpleasant," she argues that any delays he suffered from not being able to access the bathroom, access drinking water, urinating or defecating in a container in his small cell, or being subjected to extreme heat do not rise to the level necessary for an Eighth Amendment violation for deprivation of the minimal measures of life's necessities.  [Filing No. 164 at 12-13.]  She concludes that "the hardships that [Mr. Steele] experienced were temporary inconveniences that did not create a risk to [his] health and safety.  Thus, they did not amount to

9

deprivations so objectively serious as to implicate the Eighth Amendment." [Filing No. 164 at 15-16.]

In response, Mr. Steele criticizes Superintendent Knight's "dismissive and patronizing attitude" to his claims. [Filing No. 171 at 13.] He points out that conditions of confinement may combine to form the basis of a claim and emphasizes that he was subjected to the complained of conditions for more than three years at CIF.[4] [Filing No. 171 at 12-13.]

In reply, Superintendent Knight contends that Mr. Steele's complained of conditions do not rise to the level of a constitutional violation. [Filing No. 172 at 5-6.] She claims that Mr. Steele does not dispute that the nighttime restrictions, counts, and lockdowns resulted in temporary delays before he could ultimately use the bathroom. [Filing No. 172 at 5-6.] Superintendent Knight also argues that Mr. Steele has suffered no concrete harm. [Filing No. 172 at 6.]

"Adequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing *Rhodes*, 452 U.S. at 347). Likewise, "a right to adequate ventilation is violated if the ventilation is so poor as to constitute punishment." *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (citing *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986)). "Conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need."

---

[4] The Court notes that Mr. Steele did not cite to the evidence presented on summary judgment when making his arguments regarding the Defendants' liability. [Filing No. 171 at 13-15.] Instead, he generally incorporated the fact section of his brief. [Filing No. 171 at 13.] In the future, to facilitate the Court's review, Mr. Steele must directly cite to the evidence on which he relies to support the specific arguments he makes in the argument section of his briefs. Failure to do so may result in the Court deeming the argument waived.

*Budd*, 711 F.3d at 842-43 (citations omitted); *see also Rhodes*, 452 U.S. at 362-63 ("It is important to recognize that various deficiencies in prison conditions must be considered together.  The individual conditions exist in combination; each affects the other; and taken together they may have a cumulative impact on the inmates.").

Extent, duration, and consequences are relevant to determining whether conditions violate the Eighth Amendment.  *Jaros*, 684 F.3d at 671 (citing *Reed*, 178 F.3d at 853).  When a prisoner presents evidence from which a factfinder could reasonably conclude that the conditions of which he complains fell below the minimal civilized measure of life's necessities, summary judgment in favor of the defendant is inappropriate.  *See Rice*, 675 F.3d at 665-66 (concluding that a prison conditions claim could not be resolved on summary judgment when "a factfinder reasonably could conclude that the conditions of [the prisoner's] confinement exceeded mere discomfort and were constitutionally unacceptable"); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (reversing the grant of summary judgment in a case where a prisoner attested that he was confined with, among other things, "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste . . .").

In analyzing whether Mr. Steele's conditions were sufficiently serious to be considered an Eighth Amendment violation, the Court notes that many of his allegations are undisputed.  It is undisputed that Mr. Steele's cell did not have a sink or a toilet.  [Filing No. 163-4 at 3; Filing No. 171-1 at 2; Filing No. 171-4 at 1-2.]  It is undisputed that there "were multiple times throughout the day that [Mr.] Steele was locked in a cell where he did not have access to a working toilet or sink." [Filing No. 171-4 at 2.]  It is undisputed that Mr. Steele's cell did not have air conditioning, that he could not open the window, and that CIF did not provide a fan for the cell, although he was allowed to purchase one from commissary if he could afford it.  [Filing No. 163-3 at 4; Filing No.

171-4 at 7.] It is undisputed that CIF policy dictated that empty containers were "not permitted in offenders' cells" and that orders were issued for staff members to confiscate empty containers from cells during searches. [Filing No. 163-3 at 3; Filing No. 171-4 at 2.] It is undisputed that inmates "did relieve themselves in bottles" at times when locked in their cells and that Superintendent Knight was aware of that fact. [Filing No. 163-3 at 3; Filing No. 163-4 at 4; Filing No. 171-4 at 2.] It is undisputed that when CIF inmates are locked in their cells at night, they can request to use the bathroom through an electronic system. [Filing No. 163-3 at 2-3; Filing No. 163-4 at 3-4.] It is undisputed that inmates "may have to wait their turn before their cells are unlocked." [Filing No. 163-3 at 3.] It is further undisputed that the Defendants "received multiple grievances over the years . . . complaining about staff not letting them out to use the toilets." [Filing No. 163-3 at 3; Filing No. 163-4 at 4; Filing No. 171-4 at 2.]

In addition to the undisputed evidence, Mr. Steele attests that his requests to use the restroom at night "were frequently ignored or completely discarded." [Filing No. 171-1 at 2; Filing No. 163-2 at 15.] This caused him physical pain, and at least once a week he urinated in his cell because he could no longer bear the pain. [Filing No. 171-1 at 2.] Mr. Steele also defecated in his cell several times because he could not bear the pain of waiting. [Filing No. 171-1 at 2.] Mr. Steele still experiences "difficulties using the restroom including incontinence because of the many times [he] was in physical pain waiting to use the restroom." [Filing No. 171-1 at 3; Filing No. 163-6 at 2.] Mr. Steele attests that his cellmate also regularly urinated or defecated in the cell without a toilet. [Filing No. 171-1 at 3.] He submits an affidavit from a former CIF inmate, Cody Pennington, who also "had many issues where [he] was forced to urinate and/or defecate in bottles and other containers because staff would not let [him] out of [his] cell to use the toilets." [Filing No. 171-5 at 2.]

In moving for summary judgment, Superintendent Knight individually analyzes the conditions of which Mr. Steele complains—the lack of access to restrooms, sanitation, sinks, and drinking water; the small cell size; and the high temperatures—and argues that each of those conditions does not rise to the level of an Eighth Amendment violation. [Filing No. 164 at 12-16.] But as Mr. Steele correctly points out in his response brief, a prison conditions claim can focus on the combined effect of the complained of conditions. [Filing No. 171 at 3-4.] Specifically, the hygiene and sanitation risk and odor that resulted from Mr. Steele urinating or defecating in his cell because he did not have access to a toilet could certainly be exacerbated by the small size of the cell, which he shared with another inmate who also may be urinating or defecating in the cell. The conditions also could be exacerbated by the lack of ventilation in the cell, particularly on hot days given that the prison did not provide inmates with free access to a fan.

The Court rejects Superintendent Knight's characterization of the conditions Mr. Steele endured as merely "inconvenient and unpleasant." [Filing No. 164 at 12.] Being confined in a cell for extended periods of time and denied access to a toilet to the point where an inmate or his cellmate must urinate or defecate in a contraband container is surely more than an unpleasant inconvenience. The Court also rejects Superintendent Knight's argument that Mr. Steele has failed to identify any harm from or health consequences of the conditions of which he complains. [Filing No. 164 at 13.] Mr. Steele attests to pain he endured and his resulting incontinence, [Filing No. 171-1 at 2-3], but even without those physical impacts, it is possible for a mere hazard to health to support an Eighth Amendment violation. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) ("[W]e write to correct the judge's apparent assumption that creation of a mere hazard to health, as opposed to an actual impairment of health, can never be a harm sufficient to support an Eighth

13

Amendment violation."); *see also Budd*, 711 F.3d at 843 (inmates "exposure to psychological harm or a heightened risk of future injury from living in an infested jail is itself actionable").

The evidence on summary judgment shows that Mr. Steele was routinely locked in his cell for hours without access to a toilet or sink, that guards sometimes ignored his requests to use the bathroom per the protocol to do so, and that sometimes Mr. Steele had to urinate or defecate into a contraband container in his cell because he had no other option.  The evidence also shows that these conditions were exacerbated because Mr. Knight shared his small cell with another inmate who also had to urinate or defecate in the cell because he had no other option, that the temperature in the cell could reach 90 degrees or more because the windows were secured shut, and that the prison did not provide a fan for each cell.  The Court cannot conclude as a matter of law that these conditions are insufficient to prove an Eighth Amendment claim for cruel and unusual punishment. Thus, the Court denies Superintendent Knight's request for summary judgment on Mr. Steele's Eighth Amendment claim in her individual capacity.

In sum, the Court concludes that based on the evidence presented at summary judgment, a reasonable factfinder could find Mr. Steele's three-year detention in the complained of conditions sufficiently serious to violate the Eighth Amendment.  *See Lindsey v. Esser*, 2015 WL 5032659, at *4 (W.D. Wis. 2015) ("The lack of a functioning toilet, however, is more significant. . . . '[W]hen the Eighth Amendment is operative, its ban is violated by locking a person, for any significant period of time, in a cell lacking a flush toilet and a washbowl.'") (quoting *Flakes v. Percy*, 511 F.Supp. 1325, 1332 (W.D. Wis. 1981)); *see also Brown v. Ryker*, 2011 WL 221817, at *3 (S.D. Ill. 2011) ("The plaintiff here describes ongoing exposure to his own and his cellmate's human waste in his cell for over four days, being subjected to the constant odor of urine and feces from his own cell and the entire housing unit, being unable to wash after using the toilet or before

eating, and physical pain and discomfort from lack of access to a working toilet.  These unsanitary and hazardous conditions meet the objective component of a constitutional violation.").  On the other hand, a reasonable factfinder could find that the complained of conditions are not sufficiently serious such that they violate the Eighth Amendment.  *See Ashley v. Mollenhauer*, 2013 WL 432907, at *3 (N.D. Ind. 2013) ("The Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets at all times.") (citing *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) (holding that defendants being required to urinate occasionally in their cells when officers were unavailable to take them to the toilet did not violate the Eighth Amendment)).

To the extent that Superintendent Knight relies on various penological interests the prison has during lockdown and counts to excuse the conditions in which Mr. Steele was held, the Court is mindful of the principle that it should be "reluctant to interfere with the administration of prisons." *Gillis*, 468 F.3d at 494-95 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  To that end, at trial Superintendent Knight can present evidence of the policies and interest surrounding those situations and also request that the jury be instructed on related established principles of law. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (citation and quotations omitted); *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (holding that temporary discomfort "hardly violates common notions of decency").  But for the reasons stated above, the Court cannot conclude that Superintendent Knight is entitled to summary judgment on this element of Mr. Steele's Eighth Amendment claim against her in her individual capacity as a matter of law.

15

b) Deliberate Indifference

Superintendent Knight claims that there is no evidence that she was personally involved in the conditions of which Mr. Steele complains, and she emphasizes that the doctrine of respondeat superior does not apply in § 1983 actions.  [Filing No. 164 at 16-18.]  She concludes that at most, the evidence shows that she acted within her discretion to determine how to best operate the prison facility and that there is no evidence of her actual intent to cause harm or inflict unnecessary pain. [Filing No. 164 at 17.]

In response, Mr. Steele argues that Superintendent Knight was not required to be the one to carry out the obvious ends of the practices she instituted to be deliberately indifferent since she knew and took no corrective action.  [Filing No. 171 at 13-14.]  He emphasizes that Superintendent Knight had extensive knowledge of the prison's operations but ignored the complained of violations.  [Filing No. 171 at 15.]

In reply, Superintendent Knight argues that Mr. Steele designated no evidence that he made her aware of the constitutional deprivations he claims to have suffered.  [Filing No. 172 at 6-7.] She emphasizes that knowledge of the operations of the prison are not the same as knowledge of a risk to Mr. Steele's safety, let alone evidence of indifference to that risk.  [Filing No. 172 at 7.]

State officials are deliberately indifferent if they "know of and disregard an excessive risk to inmate health or safety."  *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (citation omitted). The plaintiff must show that the official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference.'"  *Id.* (quoting *Farmer*, 511 U.S. at 837).  He must also show that the official acted with reckless disregard toward the serious need by "inaction or woefully inadequate action."  *Reed*, 178 F.3d at 854.  In sum, deliberate indifference "entails something more than mere negligence" but "is

16

satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

"While there is no respondeat superior liability under § 1983, supervisors may be liable for the constitutional violations of subordinates if the supervisors know about and approve of the conduct." *Williams v. Prison Health Servs., Inc.*, 167 F. App'x 555, 558 (7th Cir. 2006) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)).  Put another way, "[i]f a senior jail or prison official, including a person with final policymaking power, is aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety, his failure to enforce the policy could violate the Eighth Amendment." *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016). "Similarly, if a supervisor designed or is aware of the institution's deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." *Id.*

The Court finds that issues of material fact prevent it from granting summary judgment in favor of Superintendent Knight on the deliberate indifference element of Mr. Steele's Eighth Amendment claim.  Superintendent Knight's admissions during discovery confirm her knowledge of the conditions at issue, particularly with regard to Mr. Steele's complaints that he was routinely locked in his cell without access to a toilet, causing him to urinate or defecate in the cell:

17

**REQUEST #7.** There were multiple times throughout the day that Steele was locked in a cell where he did not have access to a working toilet or a sink.

**RESPONSE:** *Admit.*

**REQUEST #8.** The plaintiff has had to urinate and/or defecate in a container. while he was locked in a cell, numerous times, over the years he was at the Correctional Industrial Facility.

**RESPONSE:** *If the plaintiff eliminated in a container it was of his own volition.*

**REQUEST #9.** The defendants are aware that multiple inmates are forced to urinate in bottles when they are locked in their cells at various times.

**RESPONSE:** *If inmates eliminated in a container it was of their own volition.*

**REQUEST #10.** Wendy Knight did issue orders to her staff members to confiscate empty containers located in inmates' cells when staff is searching cells.

**RESPONSE:** *Admit.*

**REQUEST #11.** Wendy Knight did order that all the trash cans be removed from all of the inmate cells in dorms B, C, D, E, and F.

**RESPONSE:** *Admit. Trash cans were removed from all units not just the ones listed by the plaintiff.*

**REQUEST #12.** One of the daily lockdown periods starts at 11:00 pm and lasts until breakfast. During this time, inmates can only get out of their cell to use the restroom upon the discretion of the officer working in the control cage.

**RESPONSE:** *Admit.*

**REQUEST #13.** The defendants have received multiple grievances over the years that Wendy Knight worked at the Correctional Industrial Facility, complaining about staff not letting them out to use the toilets.

**RESPONSE:** *Admit.*

[Filing No. 171-4 at 2.]

As an initial matter, Superintendent Knight's characterization of inmates urinating or defecating in containers in their cells "of their own volition" is contrary to her later admission that she was aware of complaints that staff were not letting inmates out of their cells to use the bathroom. Moreover, Mr. Steele attests that he had to urinate or defecate in his cell because he could no longer bear the pain after not being let out to use the bathroom. [Filing No. 171-1 at 2.] He designates the affidavit of former CIF inmate Mr. Pennington who also "had many issues where [he] was forced to urinate and/or defecate in bottles and other containers because staff would not

let [him] out of his cell to use the toilets." [Filing No. 171-5 at 2.] Thus, even ignoring the unsympathetic tone of Superintendent Knight's response to the requests for admission erroneously presuming that humans have total control over the bodily functions at issue herein, Mr. Steele has clearly presented sufficient evidence to create an issue of fact regarding the voluntariness of the practice of urinating and defecating in his cell.

Superintendent Knight asks for summary judgment on the deliberate indifference element of Mr. Steele's Eighth Amendment claim because there is no evidence that she was actually in charge of letting inmates out of their cells to use the bathroom. [Filing No. 164 at 16.] While this is true, she ignores her own admissions that Mr. Steele's cell did not have a toilet, that he was locked in it multiple times per day, that she ordered all containers and trashcans to be confiscated from the cells, and that she was aware of multiple grievances that staff were not letting inmates out of their cells to use the toilet. [Filing No. 171-4 at 2.] That evidence is sufficient at this stage of the litigation to create an issue of fact regarding Superintendent Knight's deliberate indifference. *See Daniel*, 833 F.3d at 737 ("Similarly, if a supervisor designed or is aware of the institution's deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act."); *Rice*, 675 F.3d at 679 (holding that where there was evidence that hourly checks were not being performed per a policy, a factfinder could find deliberate indifference "to the concerns underlying the rule mandating those checks").

Additionally, while Superintendent Knight attempts to downplay the significance of any injury Mr. Steele may have suffered, the well-known physical pain that can result from the denial of access to a toilet could support an Eighth Amendment claim to the extent that denial was repeated and unnecessary. *See, e.g.*, *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) ("Notably, a medical condition need not be life-threatening to be serious; rather, it could be a condition that

19

would result in further significant injury or unnecessary and wanton infliction of pain if not treated."). While it is possible that the factfinder will not conclude that Superintendent Knight acted with deliberate indifference regarding the conditions at issue in Mr. Steele's Eighth Amendment claim, the Court cannot grant summary judgment as a matter of law to her based on the record before it.

c) Qualified Immunity[5]

Superintendent Knight argues that even if Mr. Steele was subjected to an Eighth Amendment violation, she is "nonetheless entitled to qualified immunity." [Filing No. 164 at 20-21.] She emphasizes that Mr. Steele has the burden of showing that the constitutional right at issue was clearly established and that he cannot meet that in this case. [Filing No. 164 at 20-21.]

In response, Mr. Steele relies on the cases he cited in the Eighth Amendment section of his response brief to establish the underlying constitutional violation. [Filing No. 171 at 18-19.]

In reply, Superintendent Knight argues that the bathroom access cases Mr. Steele cites are insufficient, and she distinguishes those cases as more severe circumstances than what Mr. Steele alleges he endured. [Filing No. 172 at 7-8.]

Qualified immunity shields government officials from civil "liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Werner v. Wall*, 836 F.3d 751, 758-59 (7th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the Court must address whether the constitutional right that the plaintiff alleges was

---

[5] While both Defendants try to invoke qualified immunity, Mr. Steele is not pursuing a claim against Superintendent Carneygee in her individual capacity. [Filing No. 171 at 15.] Thus, Superintendent Carneygee cannot invoke qualified immunity. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("Qualified immunity protects government officials from individual liability under Section 1983.").

violated "was clearly established at the time of defendant's alleged misconduct."[6]  *Werner*, 836 F.3d at 759.  The Seventh Circuit applies the following standard to determine whether a right was clearly established at the time of the defendant's alleged misconduct:

> In determining whether a right is "clearly established," we look first to controlling precedent on the issue from the Supreme Court and from this circuit.  If such precedent is lacking, we look to all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time. Even dicta, although we do not rely on it here, in certain cases, can clearly establish a right.  In undertaking this analysis, we take care to look at the right violated in a particularized sense, rather than at a high level of generality.  But a case directly on point is not required for a right to be clearly established and officials can still be on notice that their conduct violates established law even in novel factual circumstances.

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012) (quotations and citations omitted).

Mr. Steele was confined at CIF from November 2010 until February 2014.  [Filing No. 171-1 at 1.]  The Court has found that he has presented sufficient evidence to defeat summary judgment on his Eighth Amendment claim against Superintendent Knight in her individual capacity.  The Court concludes that Superintendent Knight is not entitled to qualified immunity on this claim because it was well-established in the Seventh Circuit before the time at issue that a lack of sanitation can violate the Eighth Amendment.  *Gillis*, 468 F.3d at 493-95 ("A lack of heat, clothing, or sanitation can violate the Eighth Amendment. . . .  [D]efendants have not shown that they are entitled to qualified immunity. They cannot show that in 2002, when these events occurred, it was not well-established that denial of shelter, heat, and hygiene items implicated an inmate's constitutional rights."); *see also Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989)

---

[6] The Court must also determine whether the plaintiff's allegations "make out a deprivation of a constitutional right." *Werner*, 836 F.3d at 759.  Because the Court has already concluded that Mr. Steele has presented sufficient evidence to defeat summary judgment regarding his alleged deprivation of his Eighth Amendment rights, the Court will not further address that element of the qualified immunity analysis.

("Clearly, prison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life. . . .  This Court has repeatedly stressed that the Eighth Amendment requires prison officials to maintain minimal sanitary and safe prison conditions . . . .").  In fact, in 2007 the Seventh Circuit reversed a district court's decision granting qualified immunity to defendants on a prison conditions claim stemming from a prisoner's assignment to a cell with blood and feces on the walls and no working toilet.  *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) ("it was clearly established well before 2001 that the conditions [the inmate] describes, if true, deprived him of the minimal civilized measure of life's necessities").  While Superintendent Knight attempts to distinguish cases cited by Mr. Steele as more extreme than the conditions of which Mr. Steele complains, a case need not be directly on point for a right to be clearly established.  *Phillips*, 678 F.3d at 528.  For these reasons, the Court concludes that Superintendent Knight is not entitled to qualified immunity on Mr. Steele's § 1983 claim against her in her individual capacity.

### 3) Official Capacity Claims

Mr. Steele brings official capacity claims against both Defendants.  [Filing No. 171 at 14-15.]  Defendants ask for summary judgment on Mr. Steele's official capacity claims, arguing that "neither a State nor its official acting in their official capacities are 'persons' under meaning of 42 U.S.C. § 1983."  [Filing No. 164 at 19 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).]

In response, Mr. Steele argues that to prove an official capacity claim, he must show an official policy, widespread custom, or deliberate act that cause the conditions under which he suffered.  [Filing No. 171 at 14-15.]  He contends that he has sufficiently supported this claim with evidence at summary judgment to show that Defendants controlled the policies that he contends

injured him. [Filing No. 171 at 14-15.] Mr. Steele also argues that to the extent Defendants are

invoking Eleventh Amendment immunity, they have waived that by voluntarily removing his case

to federal court. [Filing No. 171 at 16-17.] Mr. Steele points to the parties' Joint Stipulation

stating that Superintendent Knight—the only remaining defendant before Mr. Steele amended his

complaint to add Superintendent Carneygee—agreed that "the full array of damages, including

compensatory and punitive damages as set forth in the Amended Complaint shall be available to

Steele for the remaining claims in this lawsuit, subject to the verdict of the jury or ruling of this

Court as to the merits of Steele's Eight[h] Amendment claims." [Filing No. 134 at 2-3.]

In reply, Defendants confirm that they are not invoking Eleventh Amendment immunity.

[Filing No. 172 at 1-2.] Instead, they contend that when sued in their official capacity, they are

not "persons" subject to suit under § 1983. [Filing No. 172 at 1-2.]

"An official capacity suit is tantamount to a claim against the government entity itself."

*Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). To establish liability, a plaintiff must

"establish that the deliberate indifference to which he was subjected came about as a result of a

custom or policy established by the officials." *Id.*

Typically, "official-capacity suits for retrospective relief—*i.e.*, money damages payable

from the state treasury—generally implicate the eleventh amendment in the absence of a waiver

by the state or a valid congressional override." *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934

F.2d 904, 907-08 (7th Cir. 1991). While it is possible to obtain injunctive relief through an official

capacity claim, *id.*, "when a prisoner who seeks injunctive relief for a condition specific to a

particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim,

become moot[,]" *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).

It is undisputed that Mr. Steele is no longer housed at CIF.  [Filing No. 171-1 at 1.]  Thus, he does not, and cannot, seek injunctive relief for his Eighth Amendment claim.  Typically, he would not be able to obtain money damages for his official capacity claims, but as Defendants confirm in their reply to summary judgment, they are not invoking Eleventh Amendment immunity.  [Filing No. 172 at 1-2; *see also* Filing No. 134 (Joint Stipulation).]  This is not an oversight, however, because it is the natural consequence of their removal of Mr. Steele's state court suit to federal court.  *See Nuñez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) ("state's removal of suit to federal court amounted to waiver of Eleventh Amendment immunity in that suit") (citing *Lapides v. Board of Regents of Univ. System of Georgia*, 535 U.S. 613 (2002)).

While Defendants are correct that when sued in their official capacity they are not "persons" within the context of a § 1983 claim, *Will*, 491 U.S. at 71, they ignore that the claims against them in this capacity are really claims "against the government entity itself[,]" *Klebanowski*, 540 F.3d at 637.  In fact, the case Defendants cite in support of their argument confirms that legal principle.  *See Will*, 491 U.S. at 71 ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (citations omitted).  Thus, the Court rejects Defendants' argument that they cannot be subject to suit for Mr. Steele's claims in their official capacity.

As cited above, to establish liability on an official capacity claim, a plaintiff must "establish that the deliberate indifference to which he was subjected came about as a result of a custom or policy established by the officials." *Klebanowski*, 540 F.3d at 637.  Mr. Steele argues that he has done this, [Filing No. 171 at 14-15], and Defendants do not dispute that in their opening or reply

24

briefs, [Filing No. 164; Filing No. 172]. Given that it is the moving party's initial burden to identify the basis for seeking summary judgment and develop the arguments that entitle it to relief, *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011), and the Court has rejected the only argument presented by Defendants regarding Mr. Steele's official capacity claims, the Court denies summary judgment on those claims.

### B.  State Law Negligence Claims

Mr. Steele asserts state law claims for negligence and gross negligence against the Defendants. Defendants move for summary judgment on those claims, arguing that there is no evidence that they acted negligently. [Filing No. 164 at 21-22.] They also argue that they are immune from these claims pursuant to the Indiana Tort Claims Act ("ITCA") because the conduct at issue stems from the performance of discretionary duties. [Filing No. 164 at 22-24.] They emphasize that the conditions of which Mr. Steele complains were general practices not limited just to him. [Filing No. 164 at 23-24.]

In response, Mr. Steele argues that Defendants are not entitled to summary judgment on his state law claims because "the harm they caused Mr. Steele was intentional and reckless with open disregard to the hazard to his safety and mental health." [Filing No. 171 at 18.] Mr. Steele contends that Defendants are not entitled to immunity under the ITCA because he alleges that they acted willfully and wantonly. [Filing No. 171 at 19-20.]

In reply, Defendants point out that Mr. Steele "still fails to indicate what conduct Defendants performed which fell below a reasonable standard of care." [Filing No. 172 at 8-9.] Defendants also contend that none of the exceptions to ITCA immunity apply. [Filing No. 172 at 9.]

Prison officers are shielded from liability in their official capacity under the ITCA. *Smith v. Indiana Dep't of Correction*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) (citing Ind. Code § 34-13-3-1, *et seq.*). In order to bring a suit against an employee personally, the plaintiff must show "that an act or omission of the employee that causes a loss is (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c). The purpose of the ITCA is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Smith*, 871 N.E.2d at 986 (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000)). When the employee's conduct is "of the same general nature as that authorized, or incidental to the conduct authorized," it is "within the scope of employment." *Smith*, 871 N.E.2d at 986 (citing *Celebration Fireworks*, 727 N.E.2d at 452).

Mr. Steele has confirmed through summary judgment briefing that he is only pursuing an individual capacity claim against Superintendent Knight. [Filing No. 171 at 15.] Thus, the ITCA precludes Mr. Steele's state law negligence claims against Superintendent Carneygee because she has only been sued in her official capacity, *Smith*, 871 N.E.2d at 986, and Superintendent Carneygee is entitled to summary judgment on Mr. Steele's state law claims.

As for Mr. Steele's state law negligence claims against Superintendent Knight in her individual capacity, he contends that the ITCA does not bar those claims because the evidence establishes that she acted willfully and wantonly, which is an exception to the ITCA. [Filing No. 171 at 17-18.] "The elements of willful or wanton misconduct are: (1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the

26

consequences of his conduct." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011). "'[W]anton and willful' and 'reckless' seem to imply the same disregard for the safety of others." *Id.* (quoting *Obremski v. Henderson*, 497 N.E.2d 909, 911 (Ind. 1986)).

The Court notes that the willful and wanton standard is similar to the deliberate indifference standard analyzed in the context of Mr. Steele's § 1983 claim. *See Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (noting that deliberate indifference for purposes of a § 1983 claim "require[s] a reckless disregard of a substantial risk"). For the reasons that the Court found issues of material fact to preclude summary judgment in favor of Superintendent Knight on Mr. Steele's § 1983 claim regarding the deliberate indifference element, the Court also finds that issues of material fact exist regarding whether Superintendent Knight acted willfully and wantonly, such that an exception to the ITCA could apply. If the ITCA does not apply, the Court's prior reasoning also precludes summary judgment on the elements of Mr. Steele's negligence and gross negligence claims because those standards are actually lower than the standard for deliberate indifference, for which the Court has already found issues of material fact. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) ("[W]e have consistently held that deliberate indifference requires a showing of more than mere or gross negligence."). For these reasons, the Court denies Superintendent Knight's request for summary judgment on Mr. Steele's negligence and gross negligence claims brought against her in her individual capacity.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. [Filing No. 162.] Specifically, the Court grants Defendants' request for summary judgment in their favor on Mr. Steele's state law claims against Superintendent Carneygee in her official capacity and denies their request for summary judgment

on Mr. Steele's remaining state and federal claims.  The following claims survive summary judgment and will proceed to trial:

- Mr. Steele's Eighth Amendment claim against Superintendent Knight in her individual capacity;

- Mr. Steele's official capacity claims against both Defendants; and

- Mr. Steele's state law negligence and gross negligence claims against Superintendent Knight in her individual capacity.

The Clerk is directed to docket the Court's Practices and Procedures, and the Magistrate Judge is asked to set a conference with the parties to establish a schedule for timely resolving this case.

Date: 12/7/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Electronic Distribution to Counsel of Record via CM/ECF**